| | |
|---|---|
| WAYNE JACKSON, and MARY JACKSON <br><br> Plaintiffs, <br><br> vs. <br><br> BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.; PFIZER INC.; PHARMACIA CORPORATION; PHARMACIA & UPJOHN COMPANY, INC.; MISSOURI GAMING COMPANY, INC., d/b/a ARGOSY CASINO; IOC-KANSAS CITY, INC. d/b/a THE ISLE OF CAPRI CASINO; AMERISTAR CASINO KANSAS CITY, INC.; HARRAH'S NORTH KANSAS CITY LLC, <br><br> Defendants. | No.: 06-0969-CV-W-SWH <br><br> **NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441 OF DEFENDANTS PFIZER INC, PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.** |

PLEASE TAKE NOTICE that defendants Pfizer Inc., Pharmacia Corporation, Pharmacia & Upjohn LLC, and Boehringer Ingelheim Pharmaceuticals, Inc. (collectively, "Removing Defendants") hereby remove the above-captioned action from the Circuit Court of the State of Missouri, in and for the County of Jackson, to the United States District Court for the Western District of Missouri. Removal is warranted under 28 U.S.C. § 1441 because this is a diversity action over which this Court has original jurisdiction under 28 U.S.C. § 1332. In support of this Notice of Removal, Removing Defendants state the following:

– 1 –

DEFENDANTS PFIZER, INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND
BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C.§ 1441(B)

2243460v1 Case 4:06-cv-00969-DW    Document 1    Filed 11/30/06    Page 1 of 48

1. Plaintiffs Wayne Jackson and Mary Jackson ("Plaintiffs") commenced this action entitled *Jackson v. Boeringer Ingelheim Pharmaceuticals, Inc., et al.* ("the/this action") by filing a Petition for Damages ("Petition") with the Circuit Court of Jackson County, Missouri at Kansas City. A true and correct copy of Plaintiffs' Petition is attached hereto as Exhibit "A."

2. On November 7, 2006, plaintiffs filed a First Amended Petition for Damages ("Amended Petition") with the Circuit Court of Jackson County, Missouri at Kansas City. A true and correct copy of Plaintiff's Amended Petition is attached hereto as Exhibit "B."

3. No further proceedings have been had in this action. Removing Defendants have formally requested a copy of the entire state court file from the Jackson County Circuit Court. Removing Defendants have not yet received a copy of the file. Once the state court file is received, we will forward it to the Court. Removing Defendants have included a copy of all process, pleadings, orders and other documents that have been served to date. *See* Exhibits A-C; 28 U.S.C. § 1446(a).

4. This action involves allegations regarding the prescription drug Mirapex. Plaintiffs allege that plaintiff Wayne Jackson's ingestion of Mirapex to treat symptoms of Parkinson's Disease resulted in compulsive behavior, particularly compulsive gambling. They seek damages, including recovery of Mr. Jackson's alleged gambling losses.

5. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because the Removing Defendants have satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

# I. THE REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

6. The Removing Defendants were served with the Petition on October 31, 2006. Because this Notice is being filed within 30 days of service of the initial pleading upon the Removing Defendants, it is timely under 28 U.S.C. § 1446(b). *Marano Enters. of Kansas v. Z Teca Rests., L.P.*, 254 F.3d 753 (8th Cir. 2001).

7. Pursuant to 28 U.S.C. § 1446(a), the United States District Court for the Western District of Missouri, Western Division, is the appropriate court for filing a Notice of Removal from the Circuit Court of Jackson County in Kansas City, Missouri., where said action is pending. *See* 28 U.S.C. § 105(b)(1).

8. No previous request has been made for the relief requested herein.

9. All of the properly joined and served defendants consent to this removal, including Pfizer Inc., Pharmacia Corporation, Pharmacia & Upjohn LLC, and Boehringer Ingelheim Pharmaceuticals, Inc.

10. Co-defendants who are fraudulently joined need not join in the removal. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002); *Reeb v. Wal-Mart Stores, Inc.*, 902 F. Supp. 185, 187 (E.D. Mo. 1995); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986). Because the remaining named defendants – Missouri Gaming Company, Inc., d/b/a Argosy Casino, IOC-Kansas City, Inc. d/b/a The Isle of Capri Casino, Ameristar Casino Kansas City, Inc., and Harrah's North Kansas City LLC ("Casino Defendants") – are fraudulently joined, they need not consent to removal.

11. Pursuant to 28 U.S.C. § 1446(d), Removing Defendants shall give Plaintiffs written notice of the filing of this Notice of Removal, and Removing Defendants shall file with the Clerk of

DEFENDANTS PFIZER, INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.§ 1441(B)

2243460v1 Case 4:06-cv-00969-DW   Document 1   Filed 11/30/06   Page 3 of 48

the Circuit Court of Jackson County in Kansas City, Missouri, written notice of having filed this Notice of Removal and attach thereto a copy of this Notice of Removal.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A. The Amount In Controversy Requirement Is Satisfied

13.     It is apparent from the face of the Amended Petition that plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. Plaintiffs allege injuries as a result of Mr. Jackson's ingestion of Mirapex. *See* Exh. B at ¶ 15. Plaintiff seeks compensatory damages including, but not limited to, emotional distress, humiliation, fright, shame, fear, guilt, loss of enjoyment of life and family, degradation, mental anguish, punitive damages, loss of consortium and "economic losses and expenses related to compulsive gambling and other compulsive behaviors in an amount exceeding $500,000.00." *See* Exh. B ¶ 32.

### B. There Is Complete Diversity Of Citizenship

14.     There is complete diversity as between plaintiffs and the defendants.

15.     Based on the allegations of the Amended Petition, the Removing Defendants are informed and believes that plaintiffs are citizens of Kansas, residing in the County of Leavenworth. *See* Exh. B., ¶¶ 1-2.

16.     Pfizer is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business at 235 East

DEFENDANTS PFIZER, INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.§ 1441(B)

2243460v Case 4:06-cv-00969-DW   Document 1   Filed 11/30/06   Page 4 of 48

42nd Street, New York, New York and, therefore, is a citizen of Delaware and New York for purposes of determining diversity of citizenship. 28 U.S.C. § 1332(c)(1).

17.     Pharmacia Corporation is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, New York and, therefore, is a citizen of Delaware and New York for purposes of determining diversity of citizenship. 28 U.S.C. § 1332(c)(1).

18.     Pharmacia & Upjohn LLC is, and was at the time plaintiffs commenced this action, a company organized under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, New York and, therefore, is a citizen of Delaware and New York for purposes of determining diversity of citizenship. 28 U.S.C. § 1332(c)(1).

19.     Boehringer Ingelheim Pharmaceuticals, Inc. is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business at 900 Ridgebury Road, Ridgefield, Connecticut and, therefore, is a citizen of Delaware and Connecticut for purposes of determining diversity of citizenship. 28 U.S.C. § 1332(c)(1).

20.     Based on the allegations of the Amended Petition, the Removing Defendants are informed and believe that the remaining named defendants, the Casino Defendants, are companies organized under the laws of the State of Missouri with their principal places of business in the State of Missouri. Because, however, these Casino Defendants are fraudulently joined and fraudulently misjoined to this lawsuit, their citizenship must be ignored for the purpose of determining the propriety of removal. *See Menz v. New Holland North Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006); *Mallinckrodt, Inc. v. Andrx Laboratories, Inc., et al.*, 2006 U.S. Dist. LEXIS 68110, at *5-*6

(E.D. Mo. Aug. 3, 2006). As a result, 28 U.S.C. section 1441(b) does not prohibit removal of this action to this Court.

**C. Because Plaintiffs' Claims Against The Casino Defendants Lack Any Reasonable Basis, Those Defendants Are Fraudulently Joined And Their Citizenship Should Be Disregarded**

21. Defendants are fraudulently joined "when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Wiles v. Capitol Indemnity Corporation*, 280 F. 3d 868, 871 (8th Cir. 2002). Here, the Casino Defendants are fraudulently joined because they "cannot be liable to plaintiff on any reasonable legal ground on the cause of action set out in the complaint." *Gillette v. Koss Constr. Co.*, 149 F.Supp 353, 355 (W.D. Mo. 1957); *see also Anderson v. Home Ins. Co.*, 724 F.2d 82 (8th Cir. 1983) (finding that fraudulent joinder exists if, on the face of the complaint, no cause of action lies against the resident defendant). "The 'common thread' underlying the question whether a defendant has been fraudulently joined to defeat diversity jurisdiction 'is reason. Thus, a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim.'" *Menz v. New Holland North Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006) (quoting *Wiles*, 280 F.3d at 871).

22. When determining whether a defendant is fraudulently joined and whether there is a reasonable basis for a state-law claim against a local defendant, federal courts within the Eighth Circuit do not endeavor to expand state law and do not create duties that state law has not previously recognized. *See Menz*, 440 F.3d at 1004-05 (affirming order denying remand to state court in a case alleging failure to warn where plaintiffs alleged that a repair shop failed to warn and failed to offer to perform certain repairs, holding that Missouri law did not support the alleged duty to warn or the alleged duty to offer to repair).

23. Plaintiffs allege that the Casino Defendants negligently permitted plaintiff Mr. Jackson to gamble without warning him of the dangers of gambling and negligently permitted

– 6 –

DEFENDANTS PFIZER, INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.§ 1441(B)

2243460v Case 4:06-cv-00969-DW    Document 1    Filed 11/30/06    Page 6 of 48

Mr. Jackson to gamble "when they knew or should have known that he was a compulsive gambler." Exh B. ¶¶ 114-23. The Casino Defendants, however, owed plaintiff neither a duty to warn of the risks of gambling nor a duty to prevent him from gambling.

24. This court will determine which substantive law should govern this dispute by applying Missouri's choice-of-law rules. *See Goede v. Aerojet Gen. Corp.*, 143 S.W.3d 14 (E.D. Mo. 2004); *Payne v. Cornhusker Motor Lines, Inc.*, 177 S.W.3d 820 (E.D. Mo. 2005). However, no matter which state's law applies – the forum state Missouri or the plaintiffs' residence Kansas – no reasonable basis in fact or law supports a claim against Casino Defendants.

25. No Missouri court has ever imposed a duty on a lawful gambling establishment to prevent an alleged "compulsive gambler" from gambling. What is more, numerous authorities outside of Missouri have considered whether such a duty exits, and they have uniformly found that there is no such duty. *See Brown v. Argosy Gaming Co.*, 384 F.3d 413, 418 (7th Cir. 2004) (wife did not have a cause of action against the casino where the husband was a compulsive gambler); *Merrill v. Trump Ind, Inc.*, 320 F.3d 729, 733 (7th Cir. 2003) (gambler raised no material issue of fact that could lead a jury to find that the casino engaged in willful and wanton misconduct); *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 294 (3d Cir. 1995) (holding that casino has no legal duty to prevent intoxicated gambler from continuing to gamble); *Logan v. Ameristar Casino Council Bluffs, Inc.*, 185 F. Supp. 2d 1021, 1025 (S.D. Iowa 2002) (casino did not owe gambler common law duty to prevent him from drinking and gambling); *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998) (court found that casinos had no duty to stop the plaintiff from gambling), *aff'd*, 182 F.3d 909 (4th Cir. 1999); *Harrah's Club v. Van Blitter*, No. R-85-267 BRT, R-86-21 BRT, 1988 U.S. Dist. LEXIS 18348 (D. Nev. Feb. 16, 1988) (casinos did not have a duty to force unsuccessful

players to stop betting); *Foley v. J.L. Whelan & Others*, 17 N.W.2d 367, 368 (Minn. 1945) ("The right of a loser to recover his losses at gambling from the winner was unknown at common law.").

26.     Missouri courts have never imposed a duty to warn in connection with lawful gambling, and there is no reasonable basis to predict that Missouri courts would ever create such a duty.  In failure-to-warn cases, the emphasis "has always been upon the duty of guarding against hidden defects and of giving notice of concealed dangers."  *Stevens v. Durbin-Durco, Inc.*, 377 S.W.2d 343, 347 (Mo. 1964).  In other words, a defendant "may be liable if the defect or danger is latent or concealed, but where the danger is open, obvious and apparent, or the user has actual knowledge of the defect or danger, there is no liability."  *Id.*  A premises holder, for example, can owe a duty to warn invitees of known and reasonably knowable risks.  But when the "dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger," a premises holder does not breach the standard of care "unless the possessor should anticipate the harm despite such knowledge or obviousness."  *Harris v. Niehaus*, 857 S.W.2d 222, 225-26 (Mo. 1993) (citing the *Restatement (Second) of Torts* § 343A(1) (1965)).  Here, the risk of gambling losses is open, obvious, and apparent.  That risk was obvious to plaintiff Mr. Jackson, and the knowledge of that risk was reinforced every time he lost money while gambling.  Under Missouri law, the Casino Defendants owed no duty to warn him of an obvious risk.

27.     In Kansas, most forms of gambling are illegal.  *See* KAN. STAT. ANN. § 21-4303. Because casino-style gambling is illegal in Kansas, no Kansas court has ever imposed a duty on a casino to prevent an alleged "compulsive gambler" from gambling.  Similarly, there is no reasonable basis to predict that Kansas courts would ever create a duty to warn in connection with gambling.  In failure-to-warn cases, defendants are not responsible for providing a warning for "hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or

DEFENDANTS PFIZER, INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.§ 1441(B)

2243460v1 Case 4:06-cv-00969-DW     Document 1     Filed 11/30/06     Page 8 of 48

consumer of the product." KAN. STAT. ANN. § 60-3305. As stated above, the risk of gambling losses is open, obvious and apparent. Therefore, under Kansas law, the Casino Defendants owed no duty to warn Mr. Jackson of an obvious risk.

28.     Under the above authorities, there is no reasonable basis for plaintiffs' claims against the Casino Defendants, as they owed plaintiffs no legal duties supporting plaintiffs' alleged claims. The Casino Defendants therefore are fraudulently joined and their citizenship should be disregarded for purposes of determining removal jurisdiction.

**D.     Because Plaintiffs' Claims Against The Casino Defendants Do Not Arise From The Same Transaction Or Occurrence As Claims Against The Removing Defendants, The Casino Defendants Are Fraudulently Misjoined And Their Citizenship Should Be Disregarded**

29.     The Casino Defendants' citizenship should be disregarded also because they are fraudulently misjoined to this action. Rule 20 of the Federal Rules of Civil Procedure limits the permissive joinder of parties to claims "arising out of the same transaction, occurrence, or series of occurrences." When a court concludes that joinder is improper because the parties' claims do not arise from the same transactions, it must order severance under F.R.C.P. 21. *See* James Wm. Moore, *Moore's Federal Practice*, § 20.02[6][d] (3d ed. 1997).30. According to the Complaint, Plaintiffs' allege that Casino Defendants "failed to warn [their] customers that [their] slot machines had 'near-miss' programming installed." Exh B. ¶¶ 117-18. Plaintiffs contend that these "near-miss" programs "fraudulently lured players into a false sense of security and control over the outcome of winning the 'jackpot' by having the slot machines stop at a point where all three symbols were almost aligned with each other, signifying jackpot, but not quite." Exh B. ¶ 119. Plaintiff's also claim that Casino defendants failed to warn Mr. Jackson of the dangers associated with gambling. Exh B. ¶ 120.

DEFENDANTS PFIZER, INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND
BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C.§ 1441(B)

31.     In contrast, Plaintiffs' claims against Pfizer, Pharmacia Corporation, Pharmacia & Upjohn LLC. and Boehringer Ingelheim Pharmaceuticals, Inc. are negligence and product liability claims premised on an alleged failure to properly warn of the dangers allegedly associated with Mirapex®. Exh. B. ¶¶ 46-113. Thus, Plaintiffs' claims arising out of the Casino Defendants' failure to warn do not arise out of the same "transaction or occurrence" as their claims against Pfizer, Pharmacia Corporation, Pharmacia & Upjohn LLC and Boehringer Ingelheim Pharmaceuticals, Inc. and are fraudulently misjoined. *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002) ("misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction"); *See Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 323 (5th Cir. 2001) (fraudulent misjoinder of a non-diverse defendant will not operate to defeat diversity jurisdiction); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000) (holding that a defendant's right of removal cannot be defeated by a fraudulent misjoinder of a resident defendant); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144-48 (S.D.N.Y. 2001) (finding that claim against home health care provider was misjoined with claims against drug manufacturer*); In re Rezulin Prod. Liab. Litig.*, 2003 WL 21276425, No. 00 CV 2843, at *1-*2 (LAK) (S.D.N.Y. June 2, 2003) (finding non-diverse physician fraudulently misjoined with claims against drug manufacturer where basis of claim against physician was failure to diagnose alleged liver dysfunction, while basis of claim against manufacturer went "principally to the safety and efficacy of the drug and ha[d] little if anything to do with the malpractice claim."); *Lee v. Mann*, 2000 WL 724046, No. LE-424-1 (Va. Cir. Ct. Apr. 5, 2000) (upholding finding of misjoinder of claims against physician and pharmaceutical manufacturer for injuries allegedly received from the use of a diet medication).

32.    By tacking the claims against Casino Defendants onto Plaintiffs' Complaint, Plaintiffs are attempting to rely on unrelated claims against Casino Defendants to stay in state court and bypass 28 U.S.C. § 1441. The Court should dismiss Plaintiffs' claim against Casino Defendants without prejudice pursuant to Federal Rule of Civil Procedure 21, permitting Plaintiffs to refile their claim against Casino Defendants separately and retain jurisdiction over the claims against Pfizer, Pharmacia Corporation, Pharmacia & Upjohn LLC and Boehringer Ingelheim Pharmaceuticals, Inc. *See In re Rezulin*, 168 F. Supp. 2d at 148 (severing misjoined parties "for purposes of maintaining defendant's right to removal"); *In re Rezulin*, 2003 WL 21276425, at *1 (remanding fraudulently misjoined claim against non-diverse physician and otherwise denying motion to remand).

33.    Removing Defendants hereby reserve any and all rights to assert any and all defenses to Plaintiffs' Amended Petition, including, but not limited to, insufficiency of process or insufficiency of service of process, lack of personal jurisdiction, and improper venue.

34.    Removing Defendants reserve the right to amend or supplement this Notice of Removal.

35.    Removing Defendants request trial by jury.

WHEREFORE, the Removing Defendants respectfully remove this action from the Circuit court of Jackson county, Missouri at Kansas City to this Court pursuant to 28 U.S.C. § 1441.

DATED: November 20, 2006.

SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone: 816-474-6550
Facsimile: 816-421-5547

By

Scott W. Sayler, #36088
Angela M. Seaton, #50410
**Attorneys for Defendants**
**Pfizer Inc, Pharmacia Corporation, and**
**Pharmacia & Upjohn LLC**

Kara Trouslot Stubbs, #43414
BAKER STERCHI COWDEN & RICE LLP
2400 Pershing Road, Suite 500
Kansas City, MO 64108
**Attorney for Defendant**
**Boehringer Ingelheim Pharmaceuticals, Inc.**

DEFENDANTS PFIZER, INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, AND
BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C.§ 1441(B)

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2006, a true and correct copy of the foregoing document was served upon the following by postage prepaid, U.S. Mail:

James T. Thompson
Brendan C. Buckley
3101 Broadway, Suite 800
Kansas City, Missouri 64111

**ATTORNEYS FOR PLAINTIFFS**


Beth S. Rose
Stuart M. Feinblatt
Jennifer Ewers Hurley
SILLS, CUMMIS, EPSTEIN & GROSS P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102

Kara Trouslot Stubbs
BAKER STERCHI COWDEN & RICE LLP
2400 Pershing Road; Suite 500
Kansas City, Missouri 64108

**ATTORNEYS FOR DEFENDANTS BOEHRINGER
INGELHEIM PHARMACEUTICALS, INC.**


Robert W. Tormohlen
LEWIS, RICE & FINGERSH, L.C.
One Petticoat Lane 1010 Walnut, Suite 500
Kansas City, Missouri 64106

**ATTORNEYS FOR DEFENDANT AMERISTAR
CASINO KANSAS CITY, INC.**


Matt R. Hubbard
LATHROP & GAGE L.C.
2345 Grand Blvd., Suite 2800
Kansas City, Missouri 64108

**ATTORNEYS FOR DEFENDANT HARRAH'S
NORTH KANSAS CITY LLC**

Karin Ashford
Director, Legal Business Affairs
Missouri Gaming Company, Inc.
c/o Penn National Gaming, Inc.
825 Berkshire Blvd.
Wyomissing, Pennsylvania 19610

**ATTORNEY FOR DEFENDANT MISSOURI
GAMING COMPANY, INC., d/b/a ARGOSY
CASINO**


J. Bradley Leitch
Sonnenschein Nath & Rosenthal LLP
4520 Main Street
Suite 1100
Kansas City, Missouri 64111

**ATTORNEY FOR DEFENDANT
IOC-KANSAS CITY, INC., d/b/a THE
ISLE OF CAPRI CASINO**

_____
**Attorney for Defendant Pfizer Inc.,
Pharmacia Corporation, and Pharmacia &
Upjohn Company LLC**

# EXHIBIT A

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

WAYNE JACKSON,                                    )
and MARY JACKSON,                                 )
                                                  )
                    Plaintiffs,                   )
                                                  )
vs.                                               )
                                                  )
BOEHRINGER INGELHEIM                              )
PHARMACEUTICALS, INC.;                            )
Serve: CT Corporation System                      )      06 16 - CV 27 557
       120 South Central Avenue                   )
       Clayton, MO 63105                           )      Case No. _____
                                                  )
PFIZER INC.;                                       )
Serve: CT Corporation System                      )
       120 South Central Avenue                   )
       Clayton, MO 63105                           )
                                                  )
PHARMACIA CORPORATION;                            )
Serve: CT Corporation System                      )
       120 South Central Avenue                   )
       Clayton, MO 63105                           )
                                                  )
PHARMACIA & UPJOHN                                )
COMPANY, INC.;                                     )
Serve: CT Corporation System                      )
       120 South Central Avenue                   )
       Clayton, MO 63105                           )
                                                  )
MISSOURI GAMING COMPANY, INC.,                    )
d/b/a ARGOSY CASINO                               )
Serve: CSC-Lawyers Inc. Service Co.               )
       221 Bolivar Street                          )
       Jefferson City, MO 65101                   )
                                                  )
IOC-KANSAS CITY, INC. d/b/a                       )
THE ISLE OF CAPRI CASINO                          )
                                                  )
Serve: SNR Registered Agent Serv Inc.             )
       4520 Main St., Suite 1100                   )

```
Kansas City, MO 64111                    )
                                         )
AMERISTAR CASINO                         )
KANSAS CITY, INC.                        )
Serve: Troy Stremming                    )
        3200 N. Ameristar Drive          )
        Kansas City, MO 64161            )
                                         )
HARRAH'S NORTH KANSAS                    )
CITY LLC                                 )
Serve: CSC-Lawyers Inc. Service Co.      )
        221 Bolivar Street               )
        Jefferson City, MO 65101         )
                                         )
                    Defendants.          )
```

## PETITION FOR DAMAGES

COMES NOW Plaintiffs WAYNE and MARY JACKSON, by and through their undersigned

counsel of record, and for their Petition for Damages against Defendants BOEHRINGER INGELHEIM

PHARMACEUTICALS, INC., PFIZER INC, PHARMACIA CORPORATION, PHARMACIA &

UPJOHN CORPORATION, MISSOURI GAMING COMPANY, INC. D/B/A ARGOSY CASINO,

IOC-KANSAS CITY, INC. D/B/A ISLE OF CAPRI CASINO, AMERISTAR CASINO KANSAS

CITY, INC., and HARRAH'S NORTH KANSAS CITY LLC, sets forth, states, and avers the following:

## JURISDICTIONAL STATEMENT

As is evidenced by the caption of the instant First Amended Petition, which is specifically

incorporated herein, some of the named defendants are foreign corporations, which are amenable to

jurisdiction in the courts of Missouri by virtue of the quality of their respective direct or indirect contacts

with the State of Missouri, and/or their conduct of substantial, continuous, and/or systematic business in

2

Missouri, all of which factors subject said defendants to the jurisdiction of Missouri courts pursuant to the principles of general jurisdiction set forth in VAMOOSE § 506.500 and State ex rel. K-Mart Corp. v. Hillier, 986 S.W.2d 165.167 (Mo. banc 1999). Each such foreign corporation either engaged in the business of licensing, manufacturing, distributing, and/or selling, either directly or indirectly, through third parties or related entities, in Missouri, the pharmaceutical MIRAPEX. Furthermore, the exercise of jurisdiction does not violate traditional notions of fair play and substantial justice embodied in the Due Process Clause of the United States Constitution, U.S.C.A. Const. Amend. 14.

## VENUE

Defendant IOC-Kansas City, Inc., is a Missouri corporation, which transacts, and at all times relevant to the causes of action pleaded herein transacted, business within Jackson County, Missouri. Furthermore, the injury caused to be suffered by plaintiffs' accrued, in whole or in part, in Jackson County, Missouri and the above-captioned court therefore is a proper venue within Missouri for this action, pursuant to § 508.040 R.S.Mo.

## PARTIES

1.     That Plaintiff WAYNE JACKSON is a resident of Leavenworth County, Kansas residing at 106 Willow Point, Lansing, Kansas.

2.     That Plaintiff MARY JACKSON is a resident of Leavenworth County, Kansas residing at 106 Willow Point, Lansing, Kansas.

3.     That Defendant BOEHRINGER INGELHEIM PHARMACEUTICALS INC. is a registered foreign for profit organization incorporated under the laws of Delaware, which is authorized to do business in the State of Missouri and is in good standing. Defendant's principal place of business is in

3

Ridgebury, Connecticut. At all times relevant hereto, Boehringer Ingelheim Pharmaceuticals Inc. was engaged in the business of licensing, manufacturing, distributing, and/or selling either directly or indirectly, through third parties or related entities the pharmaceutical MIRAPEX. Plaintiffs allege on information and belief that defendant does business in Missouri and at all relevant times relevant hereto it developed, manufactured, distributed and sold in interstate commerce and in Missouri, the aforementioned drug. This defendant may be served through its registered agent: CT Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

4.      That Defendant PFIZER, INC. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and worldwide headquarters in New York City, New York. Defendant is authorized to do business in Missouri and is in good standing. At all times relevant here to Pfizer, Inc. was engaged in the business of licensing, manufacturing, distributing, and/or selling, either directly or indirectly, through third parties or related entities, the pharmaceutical MIRAPEX. Plaintiffs allege on information and belief that the defendant does business in Missouri, and at all relevant times hereto developed, manufactured, distributed and sold in interstate commerce and in Missouri, the aforementioned drug. This defendant may be served through its registered agent: CT Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

5.      That Defendant PHARMACIA CORPORATION existed as an independent corporation organized and existing under the laws of Delaware with its principal place of business and worldwide headquarters in Peapack, New Jersey. Defendant is authorized to do business in Missouri and is in good standing. At all times relevant here to Pharmacia Corporation individually and/or in conjunction with Pfizer, Inc. was engaged in the business of licensing, manufacturing, distributing, and/or selling, either directly or

4

indirectly, through third parties or related entities, the pharmaceutical MIRAPEX. Plaintiffs allege on information and belief that the defendant does business in Missouri, and at all relevant times hereto developed, manufactured, distributed and sold in interstate commerce and in Missouri, the aforementioned drug. This defendant may be served through its registered agent: CT Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

6.      That Defendant PHARMACIA & UPJOHN, LLC., is a foreign for-profit corporation organized and existing under the laws of Delaware with its principal place of business in the State of Delaware, located in the City of Wilmington. Defendant is authorized to do business in Missouri and is in good standing. This corporation in 2000 merged with Monsanto Co. which eventually took the name PHARMACIA CORPORATION which eventually merged with PFIZER, INC. At all times relevant hereto, PHARMACIA & UPJOHN, LLC, individually and in conjunction with Pharmacia Corporation and Pfizer, Inc. was engaged in the business of licensing, manufacturing, distributing, and/or selling, either directly or indirectly, through third parties or related entities, the pharmaceutical MIRAPEX. Plaintiffs allege on information and belief that the defendant does business in Missouri, and at all relevant times hereto developed, manufactured, distributed and sold in interstate commerce and in Missouri, the aforementioned drug. This defendant may be served through its registered agent: CT Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

7.      That Defendant MISSOURI GAMING COMPANY, INC., d/b/a ARGOSY CASINO is a general business corporation formed in the State of Missouri, in good standing and doing business as THE ARGOSY CASINO, domiciled at 777 N.W. Argosy Parkway, Riverside, Missouri. This defendant

5

may be served through its registered agent: CSC-Lawyers Inc. Service Co., 221 Bolivar Street, Jefferson City, MO 65101.

8.     That Defendant IOC-KANSAS CITY, INC. d/b/a ISLE OF CAPRI CASINO is a general business corporation formed in the State of Missouri, in good standing and doing business as THE ISLE OF CAPRI CASINO, domiciled at 1800 E. Front St., Kansas City, Missouri. This defendant may be served through its registered agent: SNR Registered Agent Serv Inc., 4520 Main St., Suite 1100, Kansas City, MO 64111.

9.     That Defendant AMERISTAR CASINO KANSAS CITY, INC. is a general business corporation formed in the State of Missouri, in good standing and doing business as AMERISTAR CASINO, domiciled at 3200 North Ameristar Drive, Kansas City, Missouri. This defendant may be served through its registered agent: Troy Stremming, 3200 N. Ameristar Drive, Kansas City, MO 64161.

10.     That Defendant HARRAH'S NORTH KANSAS CITY, LLC is a limited liability company, formed in the State of Missouri, whose standing is active and doing business as HARRAH'S CASINO, domiciled at 1 Riverboat Drive, Kansas City, Missouri. This defendant may be served through its registered agent: CSC-Lawyers Inc. Service Co., 221 Bolivar Street, Jefferson City, MO 65101.

11.     That PFIZER is the sole owner of and the successor in interest to PHARMACIA. PHARMACIA & UPJOHN COMPANY is a subsidiary of PFIZER and PHARMACIA. All of these Defendants were and remain proprietary corporations engaged in the for-profit business of developing, manufacturing, distributing, marketing, advertising, and selling of prescription drugs, including MIRAPEX, and are the alter egos of each other and are responsible for any liability and damages flowing from each others' misconduct as well as for their own independent misconduct.

6

12. That BOEHRINGER was and remains a proprietary corporation engaged in the for-profit business of developing, manufacturing, distributing, marketing, advertising, and the selling of prescription drugs, including MIRAPEX, and is responsible for any liability and damages flowing from the other Defendants' misconduct as well as for its own independent misconduct.

13. That Pramipexole was jointly developed by BOEHRINGER AND PHARMACIA & UPJOHN. Internationally, it is developed, manufactured, distributed, marketed, advertised, and sold by BOEHRINGER and PHARMACIA & UPJOHN as MIRAPEX, Mirapexin, or Sifrol. In the United States, pramipexole is co-promoted, manufactured, distributed, marketed, advertised, and sold by PFIZER through its subsidiaries, PHARMACIA and PHARMACIA & UPJOHN and by separate Defendant BOEHRINGER as MIRAPEX.

14. That each pharmaceutical defendant, individually and collectively through each other, controlled, either directly or each through the agency of the other and other diverse subalterns, agents, subsidiaries, servants, or employees the research, design, development, testing, manufacture, labeling, packaging, distribution, promotion, marketing, advertising, sale, quality control, or prescribing of MIRAPEX, the prescription medication which WAYNE JACKSON consumed. The authority exercised by these Defendants, and each of their agents, subsidiaries, servants, or employees as set forth herein over MIRAPEX included, but was not limited to, control of research, design, development, testing, manufacture, labeling, packaging, distribution, promotion, marketing, advertising, sale, quality control, creation and implementation of all policies and procedures used by its marketing division, federal and state licensure and approvals, quality assessment and compliance, certification, legal services, and financial, tax, and accounting

7

control through fiscal policies established by these Defendants, which conduct is imputed to each

defendants jointly and severally.

## FACTS

15.     That this lawsuit is filed by Plaintiffs for damages directly caused or contributed to be

caused by the Plaintiff's ingestion of MIRAPEX resulting in his injuries and damages, including, but not

limited to, compulsive behavior, including pathologic gambling as a result of his ingestion of said

pharmaceutical product.  Plaintiff suffered damages at the defendant casinos as result of the Casinos

negligence in failing to keep Plaintiff from gambling when he was on MIRAPEX, despite actual knowledge

of the propensity of such drugs to cause compulsive behavior and prevalence of individuals in the gambling

public's population.  Thus, defendant casinos further manipulated, designed and otherwise allowed use of

gambling machinery to increase the addictive propensities of individuals, including, but not limited to, plaintiff

Wayne Jackson.

16.     That MIRAPEX is one of a class of drugs known generally as dopamine agonists.

17.     That MIRAPEX is indicated and widely prescribed with the knowledge and approval of

BOEHRINGER, PFIZER, PHARMACIA and PHARMACIA & UPJOHN for the signs and symptoms

associated with Parkinson's Disease and Parkinson-like conditions including, but not limited to "restless

legs syndrom."

18.     That Parkinson's disease affects the nervous system of the body, limiting muscle control

due to gradual loss of brain cells that make a chemical called Dopamine required for muscles to function

properly and it is estimated that as many as one million Americans are affected by Parkinson's Disease with

approximately 50,000 new diagnoses each year.

8

19.     That Dopamine Agonists such as MIRAPEX are used to treat symptoms of Parkinson's Disease. These drugs attach to the same sites in the brain as naturally occurring Dopamine, known as Dopamine receptors. This causes the brain to respond in the same way as if it had actually received Dopamine. At the present time there are five known Dopamine receptors categorized into two families, the D1 like family which is made up of D1 and D5 and the D2 like family which is made up of D2, D3, and D4.

20.     That On July 1, 1997, the Dopamine agonist Pramipexole Dihydrochloride or "MIRAPEX" was approved by the FDA for the treatment of the signs and symptoms of Parkinson's Disease. The approval was achieved after the FDA required Pharmacia & Upjohn to submit a safety update as a supplement to the original December 26, 1995 New Drug Application.

21.     That MIRAPEX has been found to bind to the Dopamine receptor D3 at a much higher rate than the remaining receptors. As early as 1999, it was reported that MIRAPEX was found to possess a 7-fold higher affinity for D3 than for D2 receptors. D3 receptors are highly concentrated in the mesolimbic pathway thought to be involved in producing pleasurable feelings, feelings of reward and desire, particularly because of the connection to the nucleus accumbens, which is also associated with these states.

22.     That the use of MIRAPEX results in obsessive compulsive and self-destructive behavior in patients that had not exhibited such behavior prior to taking the MIRAPEX.

23.     That Defendant pharmaceutical companies aggressively marketed MIRAPEX to the medical community but failed to adequately warn physicians and patients of the serious dangers which defendants knew or should have known resulted from the use of MIRAPEX as a pharmacologic therapeutic agent. Defendants widely and successfully marketed MIRAPEX throughout the United States

9

by, amount other things, extolling the virtues of MIRAPEX as a therapeutic agent for Parkinson's and Restless Leg Syndrome in order to induce widespread use. This marketing campaign resulted in thousands of individuals taking MIRAPEX and suffering serious pathological behaviors as a result. Had individuals such as Plaintiff known the risks and dangers associated with MIRAPEX, and had Defendant pharmaceutical companies disclosed such information, Plaintiff would not have taken MIRAPEX nor been subject to its catastrophic side effects.

24.    That from the time of its initial approval, June of 1997 through early 2005, the only warnings accompanying MIRAPEX were somnolence, symptomatic hypotension, specifically relating to regulation of blood pressure with resulting orthostatic hypotension, especially during dose escalation; and hallucinations. In addition, the precautions section of the packaging information included reports of rhabdomyolysis, dyskinesia, and renal pathology. There was no mention of compulsive behavior.

25.    That after over 7 years of aggressive marketing promoted by the pharmaceutical Defendants, the following statement was added to the "post-marketing experience" section of the MIRAPEX label in March of 2005: "In addition to the adverse events reported during clinical trials the following adverse reactions have been identified during post-approval use of MIRAPEX. Because these reactions are reported voluntarily from a population of uncertain size, it is not always possible to reliably estimate their frequency or establish causal relationship. Decisions to include these reactions in labeling are typically based on one or more of the following factors: 1) seriousness of the reactions; 2) frequency of reporting; or 3) strength of causal connection to MIRAPEX tablets. Similar types of events were grouped into a smaller number of standardized categories using the MEDDRA dictionary: 1) accidents including fall;

10

2) compulsive behavior including sexual and pathological gambling, fatigue, hallucinations, headache, hypotension, libido disorder, syncope, and blackouts."

26.    That in 2006, Defendant pharmaceutical companies added to the precautions section of the package label: "Cases of pathological gambling, hyper sexuality, and compulsive eating including binge eating have been reported in patients treated with Dopamine agonist therapy including Pramipexol therapy. As described in the literature, such behaviors are generally reversible upon dose reduction or treatment discontinuation." In addition, under the Information for Patients section the Defendants added, "Patients and care-givers should be informed that impulse control disorders/compulsive behaviors can occur while taking medications to treat Parkinson's Disease including MIRAPEX. These include pathological gambling, hyper sexuality, and compulsive eating. If such behaviors are observed with MIRAPEX dose reduction or treatment discontinuation should be considered." As of the date of filing this complaint there is no WARNING by the Defendant pharmaceutical companies of the risks of pathologic and/or compulsive behavior associated with the use of MIRAPEX.

27.    That on or about July 21, 1997, Wayne Jackson began taking MIRAPEX to treat his Parkinson's Disease symptoms. He was prescribed to take the drug at 0.125 mg, three times per day.

28.    That on or about December 15, 1997, Wayne Jackson's dosage use of MIRAPEX had increased to 1mg, three times per day.

29.    That on or about May 19, 1998, Wayne Jackson's dosage use of MIRAPEX had increased to 1.5mg, three times per day.

30.    That on or about July 24, 2001, Wayne Jackson and his family took a trip to Las Vegas in order to celebrate the passing of his son's 21st birthday. While on the trip, Wayne Jackson was exposed

11

to the presence of casinos and started to gamble. Wayne Jackson then instantly became addicted to gambling in the casinos.

31. That upon return from their trip to Las Vegas, Wayne Jackson immediately began to frequent Defendant Casinos located in the Kansas City, MO metropolitan area where he suffered damages and losses as result of becoming a compulsive-pathological gambler due to ingestion of MIRAPEX.

32. That Wayne Jackson's compulsive gambling and behaviors caused by the drug MIRAPEX continued from late July of 2001 through November of 2005. During that time period, Wayne and Mary Jackson suffered compensatory damages including, but not limited to, emotional distress, humiliation, fright, shame, fear, guilt, loss of enjoyment of life and family, degradation, mental anguish, and economic losses and expenses related to compulsive gambling and other compulsive behaviors in an amount exceeding $500,000.00.

33. That the casinos lured and kept Wayne Jackson in the casinos, specifically at the slot machines, by installing "near-miss" programs in the slot machines causing said machines to appear to nearly miss 'hitting' the jackpot.

34. That such "near-miss" programs installed into the slot machines lure gamblers into a false sense of control over the outcome of winning. Further, "near-miss" programs also provide gamblers with a sense that some sort of skill is involved with playing these machines.

35. That casino defendants did not warn WAYNE JACKSON that such programs had been installed into the slot machines.

36. That prior to the administration of MIRAPEX, WAYNE JACKSON had no history of gambling or other self-destructive compulsive behaviors.

12

37. That the symptoms of compulsive behaviors were directly and proximately caused by the use of MIRAPEX as directed by Defendant pharmaceutical companies and by the conduct of Defendant pharmaceutical companies as set forth herein.

38. That prior to the use of MIRAPEX by WAYNE JACKSON, all Defendant pharmaceutical companies were aware, or should have been aware, of multiple peer review studies, including studies at the prestigious Ali Center for Parkinson's Research and the Mayo Clinic, clinical trials, reports, and other anecdotal information, which provided them with superior knowledge that MIRAPEX was likely to cause compulsive behaviors, including compulsive gambling, in patients like WAYNE JACKSON.

39. That though aware of the information referred to in the preceding paragraph, Defendant pharmaceutical companies, jointly and severally and individually, failed and refused to warn patients, including WAYNE JACKSON, of the risks and dangers of MIRAPEX causing compulsive behaviors such as gambling.

40. That as a direct and proximate result of the failures of Defendant pharmaceutical companies to warn, WAYNE JACKSON and MARY JACKSON have suffered damages as more particularly set fort *infra*.

41. That MIRAPEX, when used as designed, marketed, advertised, distributed, and prescribed by Defendants, individually and jointly and severally, was and is an unreasonably dangerous product which defects directly and proximately caused WAYNE JACKSON damages as more particularly set forth herein.

42. That once WAYNE JACKSON began to frequent the casinos in Kansas City, the defendant casinos realized that WAYNE JACKSON was a heavy gambler who had Parkinson's Disease.

13

The Casinos lured WAYNE JACKSON into a drug-induced compulsion by offering free drinks, free entertainment, etc.

43.    That every time WAYNE JACKSON would lose a substantial amount of money, the Casinos would offer him more credit when ever he returned and took advantage of his drug-induced compulsive condition.

44.    That as a direct and proximate result of the failures of Defendant Casinos to prohibit WAYNE JACKSON from gambling while he was in a drug-induced condition resulting in compulsive-pathological gambling addiction, he has suffered damages as more particularly set fort *infra*.

45.    That each Defendant Casino is individually and jointly and severally responsible for WAYNE JACKSON'S losses and damages that resulted from gambling in the casinos aforementioned.

I.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

COMES NOW Plaintiffs, WAYNE AND MARY JACKSON, and their Count I of their cause of action against BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., PFIZER, INC., PHARMACIA CORPORATION, and PHARMACIA & UPJOHN COMPANY, INC., [hereinafter Defendant pharmaceuticals] sets forth, states and avers as follows:

46.    Plaintiffs, restate and re-allege each and every preceding allegation of this Complaint and incorporate each by reference as though set forth in full herein.

47.    That the Defendant pharmaceuticals, directly and indirectly, negligently manufactured, designed, tested, labeled, packaged, distributed, promoted, marketed, advertised, or sold MIRAPEX in

14

the stream of commerce, when Defendant pharmaceuticals knew, or in the exercise of ordinary care, should

have known that MIRAPEX posed a significant risk to WAYNE JACKSON'S health and well-being,

which risk was not known to WAYNE JACKSON.

48.     That at all times material hereto, Defendant pharmaceuticals had a duty to WAYNE

JACKSON to exercise reasonable care in the design, testing, labeling, packaging, distribution, promotion,

marketing, advertisement, sampling, or sale of MIRAPEX.

49.     That Defendant pharmaceuticals breached their duty to WAYNE JACKSON and were

negligent in their actions, misrepresentations, and omissions towards WAYNE JACKSON in that they:

a.      Failed to include adequate warnings with the medication that would alert WAYNE
        JACKSON and other consumers to the potential risks and serious side effects of
        MIRAPEX ingestion;

b.      Failed to include adequate information or warnings with the medication that would alert
        WAYNE JACKSON and the health care community to closely assess and monitor
        patients taking the medication for signs and symptoms or compulsive behavior;

c.      Failed to adequately and properly test MIRAPEX before and after placing it on the
        market;

d.      Failed to conduct sufficient testing of MIRAPEX which, if properly performed, would have
        shown that the medication had serious side effects, including, but not limited to, compulsive
        behaviors among other serious side effects;

e.      Failed to adequately warn WAYNE JACKSON and his health care providers that the use
        of MIRAPEX carried a risk of compulsive behavior and other serious side effects;

15

f.     Failed to provide adequate post-marketing warnings or instructions after the Defendant pharmaceuticals knew or should have known of the risk of compulsive behaviors, personal injury, and economic devastation among other serious side effects from the use of MIRAPEX;

g.     Failed to adequately warn WAYNE JACKSON that MIRAPEX should not be used in conjunction with any risk factors or without close medical or other supervision of side effects;

h.     Failed to adequately disclose and warn WAYNE JACKSON that he undertook the risk of adverse events and injuries as set forth herein;

i.     Failed to adequately and timely inform the health care industry of the risks of compulsive behaviors and serious personal/economic injuries form MIRAPEX ingestions as described herein; and

j.     Other failures as set forth in the depositions of the witnesses and opinions of the experts in this case.

50.     That although Defendant pharmaceuticals knew or should have known that MIRAPEX caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market MIRAPEX to consumers, including WAYNE JACKSON when there were safer alternative methods for the treatment of the signs and symptoms of Parkinson's Disease.

51.     That the Defendant pharmaceuticals knew of should have known that consumers such as WAYNE JACKSON would suffer injury as a result of the Defendant pharmaceuticals' failure to exercise ordinary care as described above.

16

52. That as a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of Defendant pharmaceuticals described herein, WAYNE JACKSON has sustained serious and devastating injuries. These injuries have caused, and will continue in the future to cause, extensive financial loss, pain and suffering, and emotional distress, and have substantially reduced Plaintiff's abilities to enjoy life all to Plaintiff's general damage.

53. That as a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of Defendant pharmaceuticals described herein, WAYNE JACKSON has been injured financially in health, strength and activity and has suffered injuries to body and mind. All of said injuries have caused and continue to cause WAYNE JACKSON intense anxiety, distress, fear, pain, suffering, and distress secondary to the injury and damages.

54. That based upon information and belief, Defendant pharmaceuticals actually knew of MIRAPEX's defective nature, as set forth herein, but continued to design, manufacture, market, and sell MIRAPEX so as to maximize sales and profits at the expense of the health and safety of the public, including WAYNE JACKSON, in conscious disregard of the foreseeable harm caused by MIRAPEX.

55. That Defendant pharmaceuticals' conduct, in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution, and sale of MIRAPEX, including but not limited to:

a. Marketing and promoting aggressively MIRAPEX, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;

17

b.     Failing to provide complete literature instruction, and training to health care professionals indicating the proper use of MIRAPEX, and the need for monitoring patients while on MIRAPEX.

c.     Failing to include adequate warnings with MIRAPEX that would alert consumers, physicians, hospitals, clinics, and other users to the potential risks and the nature, scope, severity, and duration of any serious side-effects of MIRAPEX, particularly, the risks of compulsive behavior;

d.     Continuing to promote the efficacy and safety of MIRAPEX, while providing little or no warnings, and downplaying any risks, even after Defendant pharmaceuticals knew of the increased risks associated with use of MIRAPEX;

e.     Delaying warnings of, and then failing to provide adequate warnings about the dangerous side effects which may have dissuaded medical providers from prescribing the Products so freely, and depriving medical providers from weighing the true risks against the benefits of prescribing MIRAPEX;

56.     That further, each of the above and foregoing acts and omissions of Defendant pharmaceuticals were fraudulent, despicable, oppressive, and malevolent. The conduct was knowing misconduct, and/or conduct undertaken recklessly and with complete indifference and conscious disregard to the rights, safety, or welfare of WAYNE JACKSON.

18

## SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY - FAILURE TO WARN

57.     WAYNE JACKSON restates and re-alleges each and every preceding allegation of this Petition and incorporates each by reference as though set forth in full herein.

58.     That Defendant pharmaceuticals, as manufacturers and suppliers of MIRAPEX, failed to provide proper warnings regarding all possible adverse side effects regarding the use of MIRAPEX, as well as the severity and duration of such side effects.

59.     That Defendant pharmaceuticals, failed to perform adequate testing that would have shown that MIRAPEX possesses serious potential side effects with respect to which full warnings were needed.

60.     That Defendant pharmaceuticals, as manufacturers and suppliers of MIRAPEX failed to provide adequate post-marketing warnings and instructions, after Defendant pharmaceuticals knew of should have known of the risk of injury from MIRAPEX, Defendant pharmaceuticals failed to provide adequate warnings and continued to aggressively promote MIRAPEX.

61.     That as the direct and proximate result of the defective condition and inadequate warning of MIRAPEX:

a.      WAYNE JACKSON suffered personal injury;

b.      WAYNE and MARY JACKSON suffered economic loss; and

c.      WAYNE and MARY JACKSON expended, and will in the future be required to expend fair and reasonable expenses for necessary health care, attention, and services and incurred incidental and other expenses.

19

62. That further, each of the above and foregoing acts and omissions of Defendant pharmaceuticals were fraudulent, despicable, oppressive, and malevolent. The conduct was knowing misconduct, and/or conduct undertaken recklessly and with complete indifference and conscious disregard to the rights, safety, or welfare of WAYNE JACKSON.

WHEREFORE, Plaintiffs pray for judgment against Defendant pharmaceuticals, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary damages, individually and jointly and severally, that will serve to punish defendant and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

### THIRD CAUSE OF ACTION
### STRICT LIABILITY - DEFECTIVE DESIGN/MANUFACTURING

63. WAYNE and MARY JACKSON restate and re-allege each and every preceding allegation of this Petition and incorporates each by reference as though set forth in full herein.

64. That WAYNE JACKSON ingested MIRAPEX, a medication that was either manufactured, distributed, sold, prescribed and/or otherwise put into the stream of commerce by Defendant pharmaceuticals. The defective condition of MIRAPEX, in that it cause compulsive and other undesirable and destructive behaviors, rendered it unreasonably dangerous, and MIRAPEX was in this defective condition at the time it left the hands of Defendant pharmaceuticals.

20

65. That Defendant pharmaceuticals engagement in the manufacture, distribution, sale and/or prescribing of pharmaceutical medications, MIRAPEX, without substantial change in the condition in which it was sold, was a proximate cause of WAYNE JACKSON'S injuries.

66. WAYNE JACKSON was unaware of the significant hazards and defects in MIRAPEX. Therefore, MIRAPEX was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the periods that WAYNE JACKSON was taking MIRAPEX, the medication was being utilized in a manner that was intended and anticipated by Defendant pharmaceuticals.

67. That MIRAPEX was defectively designed because the foreseeable risks exceeded the benefits associated with the design or formulation. Moreover, MIRAPEX is defective due to inadequate clinical trials, testing, study, and reporting regarding the results of the same.

68. That Defendant pharmaceuticals designed, manufactured and/or placed into the stream of commerce MIRAPEX, which reached WAYNE JACKSON in the same or substantially the same condition in which it was sold. Upon purchase by WAYNE JACKSON, the medication was represented to be safe and free from latent defects.

69. Defendant pharmaceuticals are strictly liable to WAYNE JACKSON for designing, manufacturing, and placing into the stream of commerce MIRAPEX which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant pharmaceuticals because of the design defects which were a producing cause of the occurrence in question.

21

70.     That MIRAPEX was defectively marketed by Defendant pharmaceuticals with respect to their failure to warn, adequately warn, or instruct in the safe use of MIRAPEX and such defect was a producing cause of the occurrence in question.

80.     That Defendant pharmaceuticals knew, or in the exercise of ordinary care should have known, that MIRAPEX was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner that it was intended and anticipated to be used. Defendant pharmaceuticals were negligent in the particulars set forth in this and the preceding paragraphs and such negligence was the proximate cause of the occurrence in question.

81.     That Defendant pharmaceuticals owed WAYNE JACKSON the duty of reasonable care when they tested, designed, manufactured, and marketed MIRAPEX. Defendant pharmaceuticals breached and violated their duty and were negligent in the particulars set forth herein.

82.     That Defendant pharmaceuticals are also strictly liable to WAYNE JACKSON under Section 402B of the Restatement (Second) of Torts in misrepresenting to the public that their product was safe and without defect, which statements and representations were false and involved a material fact concerning the character or quality of MIRAPEX, and upon which representation, WAYNE JACKSON constructively relied, and which constituted a producing cause of the injury at issue.

83.     That further, each of the above and foregoing acts and omissions of Defendant pharmaceuticals were fraudulent, despicable, oppressive, and malevolent. The conduct was knowing misconduct, and/or conduct undertaken recklessly and with complete indifference and conscious disregard to the rights, safety, or welfare of WAYNE JACKSON.

22

WHEREFORE, Plaintiffs pray for judgment against defendants, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary damages, individually and jointly and severally, that will serve to punish defendant and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

84.     Plaintiffs incorporate all preceding paragraphs as fully set forth herein and further alleges as follow.

85.     That Defendant pharmaceuticals expressly warranted that MIRAPEX was safe and well-accepted by patient studies when Defendant pharmaceuticals placed MIRAPEX into the stream of commerce. Moreover, Defendant pharmaceuticals expressly warranted to the market, including WAYNE JACKSON, by and through statements made by Defendant pharmaceuticals or its authorized agents or sales representatives, orally and in its publications, package inserts, and other written materials to the healthcare community, that MIRAPEX was safe effective, fit, and proper for its intended use in order to induce WAYNE JACKSON into taking MIRAPEX.

86.     That WAYNE JACKSON reasonably relied upon the expertise, skill, judgment, and knowledge of Defendant pharmaceuticals and upon the express warranty that MIRAPEX was of merchantable quality and fit for use as intended.

23

87.    That MIRAPEX does not conform to these express representations because MIRAPEX is not safe and has a high incidence rate of extreme side effects, including, but not limited to, compulsive self-destructive behaviors.

88.    That WAYNE JACKSON has given timely notice of breach of warranty herein.

89.    That as direct and proximate result of the breach of said warranties, WAYNE JACKSON suffered and will continue to suffer injury, harm, and economic loss.

WHEREFORE, Plaintiffs pray for judgment against defendants, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary damages, individually and jointly and severally, that will serve to punish defendant and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

90.    WAYNE and MARY JACKSON restate and re-allege each and every preceding allegation of this Petition and incorporates each by reference as though set forth in full herein.

91.    That at the time Defendant pharmaceuticals marketed, sold, and distributed MIRAPEX for use by WAYNE JACKSON, Defendant pharmaceuticals knew of the use for which MIRAPEX was intended and impliedly warranted MIRAPEX to be of merchantable quality and safe and fit for its intended use.

24

92.     That WAYNE JACKSON reasonably relied upon the skill and judgment of Defendant pharmaceuticals as to whether MIRAPEX was of merchantable quality and safe and fit for its intended use and subsequently ingested MIRAPEX.

93.     That contrary to such implied warranty, MIRAPEX was not of merchantable quality or safe or fit for its intended use, because MIRAPEX was, and is unreasonably dangerous and unfit for the ordinary purposes for which it was used, as described above.

94.     That WAYNE JACKSON has given timely notice of breach of warranty herein.

95.     That as a direct and proximate result of the breach of implied warranty, WAYNE JACKSON has suffered, and will continue to suffer, injury, harm and economic loss.

WHEREFORE, Plaintiffs pray for judgment against defendants, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary damages, individually and jointly and severally, that will serve to punish defendant and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE PER SE

96.     WAYNE and MARY JACKSON restate and re-allege each and every preceding allegation of this Petition and incorporates each by reference as though set forth in full herein.

97.     That Defendant pharmaceuticals have an obligation not to violate the law.

25

98. That Defendant pharmaceuticals have violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. Section 301, et seq., related amendments and codes and federal regulations promulgated thereunder, and other applicable state and federal law.

99. That WAYNE JACKSON, as a purchaser and consumer of MIRAPEX, is within the class of persons the statutes described above are designed to protect. Injury due to false advertising, misbranding, misleading products is the type of harm these statutes are designed to prevent.

100. That Defendant pharmaceuticals are responsible to WAYNE JACKSON for injuries incurred for violations of the statutes described above under the doctrine of negligence per se.

101. That as a direct and legal result of the violations of the statutes described above, WAYNE JACKSON suffered, and will continue to suffer injury, harm and economic loss as alleged.

WHEREFORE, Plaintiffs pray for judgment against defendant pharmaceuticals, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary damages, individually and jointly and severally, that will serve to punish defendant and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

## SEVENTH CAUSE OF ACTION
## MISREPRESENTATION AND CONCEALMENT

105. WAYNE and MARY JACKSON restate and re-allege each and every preceding allegation of this Petition and incorporates each by reference as though set forth in full herein.

26

106. That at all material times, Defendant pharmaceuticals were engaged in the business of selling drug products including MIRAPEX.

107. That Defendant pharmaceuticals misrepresented to WAYNE JACKSON and the health care industry the safety and effectiveness of MIRAPEX and/or fraudulently, intentionally, and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of MIRAPEX.

108. That Defendant pharmaceuticals made misrepresentations and actively concealed adverse information at a time when the Defendant pharmaceuticals knew, of should have known that MIRAPEX had defects, dangers, and characteristics that were other than what the Defendant pharmaceuticals had represented to WAYNE JACKSON specifically and the health care industry generally. Specially, Defendant pharmaceuticals misrepresented to and/or actively concealed from WAYNE JACKSON, the health care industry and consuming public that:

a. MIRAPEX had a statistically significant increase in compulsive behavioral side effects which could result in serious injury;

b. There had been insufficient and/or company-spun studies regarding the safety and efficacy of MIRAPEX before and after its product launch;

c. MIRAPEX was not fully and adequately tested for the side effects at issue herein;

d. Other testing and studies showed the risk of or actual serious adverse risks;

e. There was a greatly increased risk of compulsive and other dangerous and injury causing behaviors.

27

109. That the misrepresentations of and/or active concealment were perpetuated directly and/or indirectly by Defendant pharmaceuticals. Defendant pharmaceuticals made material representations that were false, knowing that such material representations were false and/or with reckless disregard for the truth or falsity of such material representations, with the intent that WAYNE JACKSON rely on such material representations, and WAYNE JACKSON acted in actual and justifiable reliance on such material representations and was injured as a result. In addition, and in the alternative if necessary, Defendant pharmaceuticals knowingly omitted material information, which omission constitutes a positive misrepresentation of material fact, with the intent that WAYNE JACKSON rely on Defendant pharmaceuticals' misrepresentations, and WAYNE JACKSON acted in actual and justifiable reliance on such material misrepresentations and was injured as a result. Defendant pharmaceuticals also committed constructive fraud by breaching one or more legal or equitable duties owed to WAYNE JACKSON relating to his use of MIRAPEX, and such breach or breaches constituted fraud because of their propensity to deceive others or cause injury to public interests or public policy.

110. That at the time of Defendant pharmaceuticals' fraudulent misrepresentations, WAYNE JACKSON was unaware of the falsity of the statements being made and believed them to be true, and had no knowledge of the information concealed and/or suppressed by Defendant pharmaceuticals.

111. That WAYNE JACKSON justifiably relied on and/or was induced by the misrepresentations and/or active concealment and relied upon the absence of safety information, which Defendant pharmaceuticals did suppress, conceal, and otherwise failed to disclose to WAYNE JACKSON'S detriment.

28

112.   That Defendant pharmaceuticals had a post-sale duty to warn WAYNE JACKSON and the public about the potential risks and complications associated with MIRAPEX in a timely manner.

113.   That the misrepresentations and active fraudulent concealment by the Defendant pharmaceuticals constitutes a continuing tort against WAYNE JACKSON, who ingested MIRAPEX.

114.   That Defendant pharmaceuticals made the misrepresentations and actively concealed information about the defects and dangers of MIRAPEX with the intention and specific desire that WAYNE JACKSON'S health care professionals and the consuming public would rely on such or the absence of information in selecting MIRAPEX as a treatment.

115.   That as a direct and proximate result of the fraudulent acts and omissions, suppression, and misrepresentations of Defendant pharmaceuticals, WAYNE JACKSON suffered significant and ongoing injuries and damages.

116.   That Defendant pharmaceuticals' conduct in making the foregoing misrepresentations, and including, but not limited to the conduct set forth, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as WAYNE JACKSON, such as constitute despicable conduct, and oppression, fraud and malice, and such conduct was at all times relevant ratified by Defendant pharmaceuticals herein, thereby entitling WAYNE JACKSON to punitive damages in an amount appropriate to punish and set an example of Defendant pharmaceuticals.

WHEREFORE, Plaintiffs pray for judgment against defendant pharmaceuticals, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary

29

damages, individually and jointly and severally, that will serve to punish defendant pharmaceuticals and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

## EIGHTH CAUSE OF ACTION AGAINST DEFENDANT CASINOS
## FAILURE TO WARN

117.    WAYNE and MARY JACKSON restate and re-allege each and every preceding allegation of this Petition and incorporates each by reference as though set forth in full herein.

118.    That Defendant casinos had slot machines at their casinos where gamblers like WAYNE JACKSON played them by inserting money into said machines.

119.    That each slot machine in these casinos had "near-miss" programs installed into said machines.

120.    That each Defendant casino allowed for the slot machines to have "near-miss" programs installed.

121.    That each Defendant failed to warn its customers that these slot machines had "near-miss" programming installed.

122.    That "Near-miss" programs fraudulently lured players into a false sense of security and control over the outcome of winning the 'jackpot' by having the slot machines stop at a point where all three symbols were almost aligned with each other, signifying jackpot, but not quite. Such programming is unfair, fraudulent, despicable, and only provides 'bait' for addictive gamblers to keep on gambling.

123.    That Defendant casinos negligently and carelessly permitted WAYNE JACKSON to gamble without warning him of the dangers of doing so;

30

124. That Defendant casinos negligently and carelessly permitted WAYNE JACKSON to gamble when they knew of should have known that he was a compulsive gambler.

125. That Defendant casinos negligently and carelessly failed to warn WAYNE JACKSON and others of the dangers in gambling while on a prescription regimen that included the unreasonably dangerous drug known as MIRAPEX.

126. That Defendant casinos knew and failed to warn others who suffered from Parkinson's Disease of the need to avoid gambling while taking MIRAPEX.

127. That Defendant casinos' conduct in failing to warn WAYNE JACKSON of the dangerous propensities of gambling and ingesting the drug MIRAPEX, and including, but not limited to the conduct set forth, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as WAYNE JACKSON, such as to constitute despicable conduct, and oppression, fraud and malice, and such conduct was at all times relevant ratified by Defendant casinos herein, thereby entitling WAYNE JACKSON to punitive damages in an amount appropriate to punish and set an example of Defendant casinos.

WHEREFORE, Plaintiffs pray for judgment against defendants, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary damages, individually and jointly and severally, that will serve to punish defendant and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

31

## NINTH CAUSE OF ACTION
## LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

102.   WAYNE JACKSON AND MARY JACKSON restate and re-allege each and every preceding allegation of this Petition and incorporates each by reference as though set forth in full herein.

103.   That as a direct, proximate and legal result of Defendants' actions, MARY JACKSON has lost the care, companionship and services of WAYNE JACKSON and has incurred expenses; the marital relationship, love, conjugal rights, and consortium between and among victim WAYNE JACKSON and MARY JACKSON has been injured; these injuries include, without limitation:

    a.    General damages in an amount above $25,000.00

    b.    Lost earnings and earning capacity;

    c.    Loss of services of spouse;

    d.    Providing of extraordinary, and/or nursing services and/or child care services.

104.   That MARY JACKSON'S economic and non-economic damages are continuing in nature, and MARY JACKSON will amend this Petition at the time of trial in order to specify the exact amount of actual damages.

WHEREFORE, Plaintiffs pray for judgment against defendants, individually and jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) that will fairly and adequately compensate Plaintiffs for their damages, as well as an amount of punitive and exemplary damages, individually and jointly and severally, that will serve to punish

32

defendants and provide an example to others of the wrongful nature of such conduct, together with all other relief the Court deems just and appropriate.

EDELMAN & THOMPSON, L.L.C.

By: _____
       James T. Thompson      Mo. #37245
       Brendan C. Buckley     Mo. #50255
       3101 Broadway - Suite 800
       Kansas City, Missouri 64111
       (816) 561-3400
       Fax:  (816) 561-1664
       Email: JamesThompson@etkclaw.com

ATTORNEYS FOR PLAINTIFFS

33